**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Henry L. HENDERSON and Earnestine
W. Henderson, Defendants-Appellants.**

No. 82–4068.

United States Court of Appeals,
Fifth Circuit.

June 20, 1983.

Elizabeth L. Gilchrist, Central M.S. Legal Services, Jackson, Miss., for defendants-appellants.

L.A. Smith, III, Asst. U.S. Atty., Jackson, Miss., for plaintiff-appellee.

Before TUTTLE,* POLITZ and GARWOOD, Circuit Judges.

TUTTLE, Circuit Judge:

Earnestine and Henry Henderson secured a rural housing loan from the Farmers Home Administration ("FmHA") in September, 1970. They used this $9800 loan to build a five room home for their family in a rural area of Yazoo County, Mississippi. The Hendersons executed a deed of trust to the FmHA designating their property as security for the loan. They later became delinquent on the loan payments. After several notices, the government accelerated the debt and instituted non-judicial foreclosure proceedings in 1981. The United States acquired title to the property in a foreclosure sale on January 18, 1982.

This action arises from a suit brought by the United States to evict the Hendersons from their home. The Hendersons counterclaimed to set aside the foreclosure and for a stay of the foreclosure pending a hearing and an administrative appeal. The district court, after a non-jury trial on February 16, 1982, ruled in favor of the government, but granted a motion for stay of judgment pending appeal.

Appellants assert three significant deficiencies in the notice they were accorded. First, they claim they were not notified of the opportunity to take an administrative appeal before an impartial decisionmaker and to have the foreclosure stayed pending such an appeal. Second, they claim to have received inadequate notice of the availability of a temporary moratorium on repayment of their loan. Third, the Hendersons allege that the notice of acceleration and foreclosure sent by the FmHA affirmatively misrepresented the controlling law on the discharge of their obligations necessary to avoid a foreclosure. Appellants urge that each of these deficiencies failed to comport with the procedural dictates of: (1) the applicable administrative regulations governing FmHA appeals procedures, 7 C.F.R. Part 1900, Subpart B; (2) relevant portions

* Circuit Judge, U.S. Court of Appeals for the Eleventh Circuit, sitting by designation.

of the FmHA's enabling legislation, 42 U.S.C. § 1471 *et seq.*; and (3) the Due Process Clause of the Fifth Amendment. We now turn to these claims.

On June 13, 1981, the Hendersons received a Notice of Delinquency and Acceleration of Indebtedness, the relevant portions of which provided:

You have breached the obligations under said deed(s) of trust by *failure to pay the principal and interest* as same became due and payable. Therefore, the United States of America is hereby informing you of its election to accelerate the indebtedness secured by said deed(s) of trust.

Accordingly, the United States of America declares that the entire unpaid indebtedness is due and payable immediately. The indebtedness referred to consists of the principal sum of $8,585.77 plus interest of $477.77 accrued through May 3, 1980, with interest accruing thereafter at the daily rate of $1.8003. You are hereby notified that unless said indebtedness is paid in full within 20 days from the date of this notice the United States of America will take action to foreclose. Any negotiation by the United States of America of any remittance tendered by you, whether mailed to the National Finance Office or whether paid directly to the County Supervisor or State Director's office, will not constitute a waiver of this acceleration or institution of foreclosure action. . . .

HOWEVER, YOU HAVE THE OPPORTUNITY TO HAVE A MEETING BEFORE THIS FORECLOSURE TAKES PLACE. If you wish to make use of this opportunity to meet because you believe that the United States is in error in accelerating your account(s) and proceeding with the foreclosure, or because you have not been advised of your right to request a moratorium of payments on your rural housing loan account, you should IMMEDIATELY contact the District Director of the Farmers Home Administration in writing. . . .

You should set out all the information you believe should be considered by the Farmers Home Administration. You may also request to appear in person to present your information. The District Director will arrange a mutually convenient time for such a meeting. The District Director will also inform you of the location of the meeting. . . .

Please remember that if you wish to take advantage of this opportunity to be heard, you may IMMEDIATELY contact the District Director because the United States plans to proceed with foreclosure proceedings shortly after July 3, 1980.

(Emphasis in original).

Appellants contend that the above notice was deficient because it affirmatively misrepresented the applicable law governing the discharge of a debtor's obligations. Appellants assert, and the FmHA concedes, that the law of the State of Mississippi is applicable to the obligations underlying the rural housing loan agreement. Specifically, Miss.Stat.Ann. 89–1–59 governs the avoidance of foreclosure sales by cure of delinquent debt payments:

Where there is a series of notes or installment payments secured by a deed of trust, mortgage or other lien, and a provision is inserted in such instrument to secure them to the effect that upon a failure to pay any one (1) note or installment, or the interest thereon, or any part thereof, . . . that all the debts secured thereby should become due and collectible, and for any such reason the entire indebtedness shall have been put in default or declared due, the debtor, or any interested party, may at any time before a sale be made under the terms and provisions of such instrument, or by virtue of such lien, *stop a threatened sale* under the powers contained in such instrument or stop any proceeding in any court to enforce such lien *by paying the amount actually past due by the terms of such instrument or lien, rather than the amount accelerated,* and such taxes or insurance premiums due and not paid, with proper interest thereon, if such should have been paid by any interested

party to such instrument. *Any such payment or payments shall reinstate, according to the terms of such instrument, the amount so accelerated, the same as if such amounts not due by its terms had not been accelerated or put in default.* (Emphasis added). This provision permits a delinquent debtor to avoid a foreclosure sale by paying all arrearages and costs. Tendering the amount past due will not only prevent foreclosure, it will also proscribe, regardless of the terms of the loan agreement, acceleration of the debt and restore future repayments of the loan to their original schedule.

The Hendersons were never informed that they could pay just $1200 to avoid foreclosure and continue the loan.[1] To the contrary, the notice of acceleration of indebtedness they received stated, "Any negotiation by the United States of America of any remittance tendered by you . . . will not constitute a waiver of this acceleration or institution of foreclosure action." This clause indicates that foreclosure could only have been avoided by paying over $9,000, which constituted the entire outstanding balance of the loan plus accrued interest. While it is conceivable that the Hendersons, a family of only modest means whose main wage earner was ill, could have come up with $1200 to save their largest asset, they surely regarded payment of $9,000 as next to impossible. Nor, more significantly, was such payment necessary under the governing statute to insure continued servicing of the loan.[2]

■ The United States responds by arguing that it was under no obligation to explain the relevant statutes to appellants.

Appellee asserts that such explanation should have been rendered by the Hendersons' attorney. The United States also suggests that any misrepresentation was inconsequential because the Hendersons received actual notice of their authority to cure the delinquency by paying only the arrearages plus costs during a meeting with the FmHA County Supervisor. While we agree that the United States was under no obligation to provide appellant with its interpretation of the applicable statutory provisions, the government nonetheless may not affirmatively misrepresent the obligations of a debtor. The indication that any remittance, short of payment of the entire principal plus accrued interest, would fail to save the loan arrangement indisputably dampened the Henderson's efforts to comply, with what they surely regarded as a deed term that could not possibly be fulfilled. Moreover, the meeting with the County Supervisor that the government calls to our attention occurred only one week before the foreclosure sale. The FmHA may not in good faith contend that one week was an adequate time period for appellants to have placed their financial affairs in order when the FmHA's own regulations require at least 20 days notice before institution of non-judicial foreclosure proceedings.[3]

■ We are unable to countenance the defective notice appellants received in this case. The government should not be entitled to profit by its own misrepresentations. The district court wholly failed to address this issue. Fundamental notions of fairness and due process counsel our reversal of the district court's opinion. *See generally Boddie v. Connecticut,* 401 U.S. 371, 380, 91

---

1. The Hendersons apparently were only $300 in arrears when the foreclosure proceedings were first instituted. On January 1, 1981, another annual payment of approximately $800 fell due. Although the Hendersons, by way of a supplemental agreement, were obligated to pay the loan on a monthly basis, it appears that the FmHA had established a pattern of accepting yearly payments.

2. It should be pointed out that the government's conduct, in misrepresenting to the Hendersons their ability to cure the default, was hardly benign. The government's foreclosure

and subsequent acquisition of title at the sale secured property valued at approximately $20,000 in satisfaction of a $9,000 obligation.

3. These 20 days must be added to Mississippi's publication requirements for non-judicial foreclosure actions, requiring advertising of a real estate sale for three consecutive weeks preceding such a sale, Miss.Code Ann. § 89–1–55, in determining just how far short the actual notice received by the Hendersons falls of the proper written notice.

S.Ct. 780, 787, 28 L.Ed.2d 113 (1971) ("the State owes to each individual that process which, in light of the values of a free society, can be characterized as due."); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Thorpe v. Housing Authority of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); *United States v. White,* 429 F.Supp. 1245 (N.D.Miss.1977). The reason for providing appellants any notice whatsoever in this situation is twofold: (1) so that appellants may challenge the basis for the administrator's decision; and (2) so that appellants may order their affairs and make the necessary payments to avoid foreclosure and continue the loan arrangement. *See* 7 C.F.R. § 1872.1(b); § 510(g) of Title V of Housing Act of 1949, 42 U.S.C. § 1480(g), as amended by § 503 of the Housing Community Development Amendments of 1978, P.L. 95–557, 92 Stat. 2080 (1978). The government's misrepresentation in this case virtually assures that appellants, unless otherwise informed, would believe they were unable to save their home from the auctioneer's block. This misrepresentation negates the very reason for such notice and thus runs afoul of appellants' fundamental due process rights.[4]

Appellants indicated at the trial their willingness to pay the full amount of the arrearages plus costs. They also claim to have escrowed all obligations that would have fallen due since the foreclosure sale if the loan agreement was still in effect. Appellants deserve new and accurate notice giving them 20 days in which to dispute the amount claimed to be delinquent or to pay the full arrearages plus costs, plus the escrow funds, to make their account current and thus avoid a foreclosure sale. We cannot know that this is a case, as the government suggests, of appellants offering "too little, too late," since the FmHA wrongfully informed appellants that anything they offered short of payment of the entire loan would be too little. We therefore reverse the district court's judgment granting eviction and remand the case to the district court to set aside the foreclosure and for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

GARWOOD, Circuit Judge, Dissenting:

I respectfully dissent. In my opinion, we should not direct the district judge on remand to set aside the foreclosure, but rather to determine whether the appellants were, in fact, misled to their material prejudice by the erroneous implication of the foreclosure notice that payment of the entire note balance was required to avoid foreclosure.[*]

---

4. Appellants also raise two other alleged deficiencies in the Notice of Delinquency and Acceleration of Indebtedness. While it is not absolutely necessary for us to reach these claims, we do briefly comment upon them here because appellants will be entitled to fresh notice should the FmHA attempt to foreclose again. The notice the Hendersons received of the right to a temporary moratorium on payments in exceptional circumstances appears perfectly proper. Three prior notifications of deficiency elaborated the special circumstances under which such a moratorium is available and the Notice of Deficiency and Acceleration clearly referred to this right. While we believe that notice of the right to an administrative appeal was also adequate, we do entertain serious doubts about the failure to specify in the notice the availability of a stay of foreclosure pending appeal, as required by 7 C.F.R. § 1900.53(a)(4) of the 1979 regulations and 7 C.F.R. § 1900.-56(a)(4)(v) of the 1981 regulations.

* Wholly apart from constitutional requirements, which I do not reach and do not understand the majority to definitively rule on, it is apparent, and indeed not seriously disputed, that the foreclosure would be invalid under both Mississippi law and applicable FmHA regulations if the appellants were actually misled to their material prejudice by the potentially misleading wording of the notice.

I agree with the majority that appellants received adequate notice of the availability of a temporary moratorium and of their right to an administrative appeal. As the district court did not address, and the majority opinion pretermits, the issue of whether appellants were given such notice as they were entitled to respecting their right to request a stay pending administrative appeal, there is no occasion for this dissent to reach that issue. There may have been no prejudice in this respect to appellants, as they at all times remained in their home. If necessary, the issue could be addressed by the district court on remand.

858

The government argues appellants were not prejudiced in that they never tendered even the amount of the delinquency, and at least a week before the foreclosure were specifically informed in person that tender of that amount would prevent foreclosure. The majority rejects these contentions because appellants *may* have been misled by the wording of the foreclosure notice into believing they faced what for them would have been the practically impossible task of paying off the entire note balance prior to the scheduled foreclosure date, and hence *may* have made insufficient efforts to raise the delinquency amount until a week before foreclosure, when there was no longer enough time for them to raise even that. As the majority observes, "[t]he district court wholly failed to address this issue." However, on oral argument appellants admitted there was no evidence that they were misled by the wording of the foreclosure notice and, at least inferentially, that there was no evidence that they ever forbore efforts to raise the delinquency amount. The majority does not construe the record to be otherwise. In this posture of the case, I believe we should not simply assume, as matter of law, that appellants were actually either misled or prejudiced by the notice's potentially misleading wording.