# IN THE SUPREME COURT OF TEXAS

No. 17-0345

PATRICIA MOSLEY, PETITIONER

v.

TEXAS HEALTH AND HUMAN SERVICES COMMISSION AND TEXAS DEPARTMENT OF
FAMILY AND PROTECTIVE SERVICES, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

**Argued January 9, 2019**

JUSTICE BROWN delivered the opinion of the Court.

JUSTICE BLACKLOCK filed a concurring opinion, in which JUSTICE DEVINE and JUSTICE BUSBY joined.

In this case we hold that under the Administrative Procedures Act, an appellant seeking judicial review of an administrative order must first file a motion for rehearing with the administrative-law judge unless another statute plainly provides otherwise. We further hold that an agency's misrepresentation of the proper procedures to seek judicial review of an adverse order can—at least under some circumstances—violate the appellant's right to due process.

Accordingly, we agree with the court of appeals that the trial court below lacked jurisdiction over the petitioner's appeal because she did not seek rehearing of the administrative-law judge's ruling. But, unlike the court of appeals, we further hold that the agency's misleading

letter to the petitioner, and the admittedly incorrect regulation on which it relied, effectively deprived her of her right to judicial review. Although the agency now insists a motion for rehearing was required, a letter the agency sent the petitioner quoted a regulation stating she had thirty days to seek judicial review from a district court without mentioning a motion-for-rehearing requirement. The petitioner acted accordingly. The agency concedes the now-repealed regulation misstated the law, but argues the petitioner should have known better. We disagree and hold that the letter's misrepresentations amounted to a denial of due process.

We therefore affirm the court of appeals' judgment in part and reverse in part. Because the remedy for a deprivation of due process is due process, we direct the Health and Human Services Commission to reinstate Mosley's administrative case to afford her an opportunity to seek rehearing of the order entered against her.

**I**

One of the duties of the Texas Department of Family and Protective Services (the Department) is to investigate reports of "abuse, neglect, or exploitation of an elderly person or person with a disability." TEX. HUM. RES. CODE § 48.001. When it discovers any "reportable conduct," it notifies the Department of Aging and Disability Services (DADS). *Id*. § 48.403. DADS then adds the information to its Employee Misconduct Registry. *Id*. The Registry lists employees of DADS-licensed facilities who have been found to have committed "reportable conduct." TEX. HEALTH & SAFETY CODE § 253.007(a). The Registry contains the employee's name, address, social-security number, and a description of the reportable conduct. *Id*. Before any facility can hire an employee, it must search the Registry "to determine whether the applicant for employment is designated . . . as having abused, neglected, or exploited an individual," and cannot

hire the employee if he or she appears in the Registry. *Id.* § 253.008(a)–(b). Placement in the Registry is effectively career-ending. *See id.*

Upon a finding of "reportable conduct," the Department must provide written notice to the employee that includes: a summary of its findings; a statement of the employee's right to a hearing on the findings; and a statement notifying the employee that if the employee fails to timely respond to the notice, the reportable-conduct finding will be recorded in the Registry. TEX. HUM. RES. CODE § 48.404(a). The employee may request a hearing on the reportable-conduct finding within thirty days of receiving the notice. *Id.* § 48.404(b). If the employee fails to timely request the hearing, the Department "shall" issue an order approving the finding and forward it to DADS for inclusion in the Registry. *Id.* § 48.404(c). After a Registry hearing, the administrative-law judge (ALJ) "shall promptly issue an order regarding the occurrence of the reportable conduct." *Id.* § 48.405(b). The employee may request judicial review of a Registry finding. *Id.* § 48.406.

The Department investigated an incident involving Patricia Mosley's care of a group-home resident, confirmed a finding of "reportable conduct," and recommended Mosley's name be added to the Registry. Mosley requested a hearing, which the Department delegated to the Health and Human Services Commission (the Commission). The ALJ sustained the determination and sent Mosley a "Final Decision and Order." The accompanying letter stated:

> Enclosed is the Final Decision and Order (Hearing Order) in the hearing you requested in the-above referenced matter. This Hearing Order will become final and your name will be submitted to the Employee Misconduct Registry unless you timely petition for judicial review.
>
> Should you wish to appeal the Hearing Order, section 711.[1]431[1] of the Texas Administrative Code provides, in pertinent part, as follows:

---

[1]The Commission incorrectly cited the regulation it now concedes incorrectly stated the law.

3

(a) To request judicial review of a Hearing Order, the employee [you] must file a petition for judicial review in a Travis County district court, as provided by Government Code, Chapter 2001, Subchapter G.

(b) The petition must be filed with the court no later than the 30th day after the date the Hearing Order becomes final, which is the date that the Hearing Order is received by the employee.

(c) Judicial review by the court is under the substantial evidence rule, as provided by § 48.406, Human Resources Code.

(d) Unless citation for a petition for judicial review is served on DFPS within 45 days after the date on which the Hearing Order is mailed to the employee, DFPS will submit the employee's name for inclusion in the Employee Misconduct Registry. If valid service of citation is received after the employee's name has been recorded in the registry, DFPS will determine whether the lawsuit was timely filed and, if so, immediately request that the employee's name be removed from the registry pending the outcome of the judicial review. . . .

At issue in this appeal are the representations contained in the letter and the quoted provisions of a now-repealed Department rule addressing finality of the ALJ's order and the process by which Mosley may seek judicial review. Specifically, the letter indicates that the "Order will become final . . . unless you timely petition for judicial review" within thirty days of receiving the order. The letter fails to explain that Mosley may file a motion for rehearing or indicate that doing so is a prerequisite for judicial review. The Department and the Commission (the Agencies) concede the letter and the regulation therein contained bad information. The Agencies now argue that the Administrative Procedures Act (the APA), *see* TEX. GOV'T CODE §§ 2001.001–902, required Mosley to file a motion for rehearing with the ALJ before seeking judicial review, and that the order was not final for purposes of appeal because she failed to do so.

Claiming she relied on the letter and quoted regulation, Mosley sought judicial review without filing a motion for rehearing. The Agencies filed a plea to the jurisdiction, arguing the trial court lacked subject-matter jurisdiction because Mosley failed to seek rehearing. Although the Agencies concede the Department rule in place at the time incorrectly stated the law, they argued

4

an incorrect agency rule cannot confer subject-matter jurisdiction on the trial court and that Mosley was charged with knowledge of the APA's requirements.

While Mosley litigated her case at the trial court, the Department amended its rule to expressly require a motion for rehearing: "A timely motion for rehearing is a prerequisite to judicial review and must be filed in accordance with Subchapters F and G, Chapter 2001, Government Code." 40 TEX. ADMIN. CODE § 711.1431(a). Importantly, a Department memo circulated just two months after the agencies filed their pleas to the jurisdiction stated that the "primary purpose" of the rule amendment was "to update the terminology and process requirements regarding the due process rights of an employee prior to placement on the [Registry]." According to the memo, the amendment "[m]akes the filing of a timely motion for rehearing in accordance with Subchapters F and G of Government Code Chapter 2001 a prerequisite to judicial review" and "[u]pdates the guidance regarding seeking judicial review by referring to the operative law on point, Subchapters F and G of Government Code Chapter 2001."

The trial court overruled the Agencies' jurisdictional plea but ruled for them on the merits of Mosley's appeal, finding that substantial evidence supported the ALJ's order. *See* TEX. HUM. RES. CODE § 48.406(c)(2) (providing that judicial review will be conducted under the substantial-evidence rule); *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986) (recognizing that under the substantial-evidence rule, a reviewing court may set aside an ALJ's decision only if it was "made without regard to the law or the facts and therefore was unreasonable, arbitrary, or capricious," and not simply because the trial court "would have reached a different conclusion"). Accordingly, Mosley appealed the trial court's decision on the merits, and the Agencies—though winning on the merits at the trial court—cross-appealed the trial court's denial of their jurisdictional plea.

5

The court of appeals reversed the trial court's judgment on the Agencies' jurisdictional plea and rendered judgment that Mosley's failure to seek rehearing deprived the trial court of subject-matter jurisdiction. 517 S.W.3d 346, 354 (Tex. App.—Austin 2017). The court of appeals therefore did not consider the merits of Mosley's appeal. The court reasoned that while the statutory provisions providing for judicial review of a Registry finding are silent as to a motion for rehearing, the motion-for-rehearing requirement in the APA "is jurisdictional and applies generally to *all* suits for judicial review to challenge agency orders issued in contested cases." *Id.* at 350. This "jurisdictional prerequisite," the court continued, "applies even when agency-specific legislation authorizes judicial review of agency orders but does not explicitly make reference to motions for rehearing or expressly incorporate the APA." *Id.* at 350–51.

That standard notwithstanding, the court of appeals noted that chapter 48 of the Human Resources Code—which governs judicial review of a Registry finding—*does* expressly invoke the APA. Although it does not "expressly require a motion for rehearing," the court observed that it nonetheless provides that "'[j]udicial review of [a Registry finding] is instituted by filing a petition as provided by Subchapter G [of the APA].'" *Id.* at 351 (quoting TEX. HUM. RES. CODE § 48.406(c)) (internal punctuation omitted). Subchapter G of the APA, in turn, "provides that '[a] person initiates judicial review in a contested case by filing a petition not later than the 30th day after the date the decision or order that is the subject of complaint is final *and appealable*.'" *Id.* at 351–52 (quoting TEX. GOV'T CODE § 2001.176(a)) (emphasis added). And because the APA further states that "[a] timely motion for rehearing is a prerequisite to an appeal in a contested case," TEX. GOV'T CODE § 2001.145(a), the court held that an "appealable" order under the APA

6

is one in which "a motion for rehearing has been filed and overruled." *Id.* at 352 (citing TEX. GOV'T CODE § 2001.145(a), (b)).

The court of appeals further rejected Mosley's argument that "[the Department's] rules effective at the time of the proceedings below reflect the agency's 'interpretation' that no motion for rehearing was required," reasoning that "an agency may not waive a jurisdictional prerequisite such as the APA's motion-for-rehearing requirement, even if the agency improperly communicates to a party that there are no further administrative remedies available to pursue." *Id.* at 353. The court also disagreed with Mosley that the legislature had impliedly adopted the Department's interpretation. *Id.* Finally, the court rejected Mosley's argument that "her constitutional rights to due process were violated by [the Department's] promulgating an 'invalid' rule, directing that she follow the rule and thereby 'preventing' her from seeking rehearing, and ultimately adversely affecting her vested property and liberty interests as a state-registered nurse aid." *Id.* at 354. Holding that Mosley was charged with knowledge of the APA and its requirements, the court stated that "Texas law does not allow a party to avoid statutory jurisdictional prerequisites simply by including a constitutional claim." *Id.*

We granted Mosley's petition for review.

## II
### *Motion for Rehearing*

Mosley re-urges her arguments to this Court that a motion for rehearing is not a prerequisite for judicial review. She first argues our precedent does not support the court of appeals' position that the APA's motion-for-rehearing requirement applies by default to judicial review of *all* agency orders unless another statute indicates otherwise. Although the court of appeals largely followed

its own precedents, it also relied on our holding in *Texas Water Commission v. Dellana*, 849 S.W.2d 808 (Tex. 1993) (per curiam). But Mosley insists *Dellana* does not support so broad a rule.

Mosley further points out that chapter 48 of the Human Resources Code section says nothing about motions for rehearing. She acknowledges that section 48.406 invokes the APA, but argues that under section 48.406(b), that invocation applies to the *entire* APA, including a provision allowing agencies to adopt "rules of practice stating the nature and requirements of all available formal and informal procedures[.]" TEX. GOV'T CODE § 2001.004(1). The Department therefore had rulemaking authority to determine when its orders would be final and appealable, Mosley argues, and it exercised that authority by enacting a rule under which no motion for rehearing was required. So although the Agencies have disclaimed that rule and concede that it misstated the law, Mosley insists the rule was valid and consistent with the Department's statutory authority to establish judicial-review procedures. Accordingly, Mosley continues, the Department was allowed to forgo a motion-for-rehearing requirement, and Mosley simply followed the Department's validly promulgated rule. But Mosley simultaneously argues that we should limit chapter 48's invocation of the APA for purposes of section 48.406(c), which refers only to subchapter G of the APA. Based on that reference, Mosley argues that we should not apply the finality rules and motion-for-rehearing requirement found in APA's subchapter F to section 48.406(c)'s requirement that a petition for judicial review be filed "as provided by" subchapter G of the APA.

Mosley further argues that while the Department's now-repealed rule was still on the books, the legislature substantively amended the statutory provisions at issue without adding a motion-for-rehearing requirement, indicating legislative acquiescence to that agency's

8

interpretation of the statute. She also urges us to construe the order against her as final for purposes of appeal based on agreement between her and the Department, and to hold that filing a motion for rehearing with the ALJ would have been futile.

We agree with the court of appeals, however, that the APA requires a motion for rehearing as a jurisdictional prerequisite to judicial review of a Registry finding. The APA's motion-for-rehearing requirement applies to judicial review of *all* agency orders barring explicit statutory indication to the contrary. Mosley is correct that section 48.406 of the Human Resources Code says nothing about motions for rehearing, but it doesn't need to. The APA has already spoken. Moreover, section 48.406, while silent as to motions for rehearing, invokes the APA twice when describing the process for seeking judicial review. Although Mosley argues that the APA confers authority on the Department to adopt rules contrary to APA provisions, she does not—and cannot—argue the legislature disavowed the APA's applicability to judicial review of Registry findings.

The APA declares that it is "the public policy of the state through this chapter to" both "provide minimum standards of uniform practice and procedure for state agencies" and "restate the law of judicial review of state agency action." TEX. GOV'T CODE § 2001.001(1), (3). This is a plain statement of the APA's general applicability to all state agencies and the processes for judicial review of their decisions. The APA's provisions to that effect, which are myriad and voluminous, would be wasted ink if they did not generally apply to all state agencies. It is therefore unsurprising that the court of appeals below, which handles the bulk of appeals of administrative orders, has consistently held that "[u]nless otherwise provided, the APA's contested-case and

9

judicial-review procedures apply to agency-governed proceedings." *Marble Falls Indep. Sch. Dist. v. Scott*, 275 S.W.3d 558, 563 (Tex. App.—Austin 2008, pet. denied).[2]

The court of appeals has faced this situation before. In *Reed v. State of Texas Department of Licensing & Regulation*, it addressed an issue nearly identical to this case: whether a conflict existed between the APA's motion-for-rehearing requirement and an agency's enabling statute's silence on the issue. 820 S.W.2d 1 (Tex. App.—Austin 1991, no writ) (per curiam). Relying on the APA's stated purposes of providing "minimum standards" and "restat[ing] the law of judicial review," the court of appeals held that the APA requires the filing of a motion for rehearing and that the omission of mandatory language in the enabling statute "did not expressly repeal the application of [the APA] to the Department." *Id.* at 2. Similarly, in *Mednick v. Texas State Board of Public Accountancy*, the court noted that the relevant enabling statute "does not mandate that a party file a motion for rehearing; it does, however, provide for the application of the minimum procedural requirements of the APA." 933 S.W.2d 336, 338 (Tex. App.—Austin 1996, writ denied). Furthermore, the court held that because the APA provides the minimum procedural requirements, "an agency's organic statute cannot *restrict* [those requirements]." *Id.*

And the legislature has certainly proved itself able to exempt an agency procedure from the APA's minimum procedural requirements when it wants to. It has expressly provided that the APA "does not apply to a rule or internal procedure of the Texas Department of Criminal Justice or Texas Board of Criminal Justice," TEX. GOV'T CODE § 2001.226; that "Subchapter G, Chapter 2001, does not apply to a [contested-case] hearing" before the State Office of Administrative

---

[2] *See also Mednick v. Tex. State Bd. Pub. Accountancy*, 933 S.W.2d 336, 338 (Tex. App.—Austin 1996, writ denied); *Reed v. State Dept. of Licensing & Regulation*, 820 S.W.2d 1, 2 (Tex. App.—Austin 1991, no writ) (per curiam); *AGAP Life Offerings, LLC v. Tex. State Sec. Bd.*, No. 03-11-00535-CV, 2013 WL 6464537, at *5 (Tex. App.—Austin Nov. 26, 2013, no pet.) (mem. op.).

10

Hearings regarding state contract disputes, *id.* § 2260.104(f); and that "[a] request for rehearing is not required for a party to appeal the [Commission of Education's] decision" on non-renewal of a teacher's contract to a state trial court, TEX. EDUC. CODE § 21.3041(b). That the legislature has spoken clearly when it wishes to exclude certain persons and issues from the APA suggests that silence in an agency's enabling legislation as to a motion-for-rehearing requirement does not exempt the agency from the APA's general applicability. *See Miller v. Keyser*, 90 S.W.3d 712, 719 (Tex. 2002) (declining to extend liability exemption to non-media employees because statute "demonstrates that the Legislature knew how to exempt employees from liability . . . [a]nd it chose to only exempt media employees").

In addition to its own precedents, the court of appeals relied on our holding in *Texas Water Commission v. Dellana* for support of its position that the APA's motion-for-rehearing requirement applies generally unless explicitly disavowed. The Agencies argue *Dellana* decides this case; Mosley argues *Dellana* is distinguishable and the question remains open. In *Dellana*, we indeed held that a trial court lacked jurisdiction because the petitioner failed to file a motion for rehearing before seeking judicial review. 849 S.W.2d 808, 810 (Tex. 1993) (per curiam). At issue was a Water Code judicial-review provision that merely directed parties to file a petition for judicial review without reference to the Administrative Procedure and Texas Register Act (APTRA)—the APA's predecessor statute in place when *Dellana* was decided. *Id.* at 809–10 (citing TEX. WATER CODE § 5.351(c)(1)) ("A person . . . may file a petition to review" within "30 days after the effective date of the ruling, order, or decision.") (internal punctuation omitted). But we held that the "exhaustion doctrine, codified in the [APTRA], requires the filing of a motion for rehearing before the agency as a prerequisite to judicial review." *Id.* at 810.

11

Mosley argues *Dellana* is distinguishable because the petitioner in that case "never claimed that any statute or agency rule excused its duty to seek agency rehearing." Moreover, Mosley contends that the *Dellana* court did not discuss the language of the Water Code's judicial-review provision or focus on the interplay between the Water Code's silence as to the motion-for-rehearing requirement and the APTRA's requirement of the same. These distinctions notwithstanding, we consider *Dellana* supportive of the position that the APA's motion-for-rehearing requirement is generally applicable unless expressly disavowed. We stop short of holding that *Dellana*—a quarter-century-old per-curiam opinion issued under a predecessor statutory regime—controls the outcome here. But based on the stated purpose and comprehensive reach of today's APA, we do not hesitate to ratify the court of appeals' approach. The APA, and in particular its motion-for-rehearing prerequisite to judicial review, applies generally and until the legislature says it doesn't.

And the legislature hardly hinted that the Act doesn't apply when it invoked it twice in outlining the procedures for judicial review of a Registry finding. Chapter 48 of the Human Resources Code—the enabling legislation that governs the Registry, administrative review of the placement of an employee in the Registry, and judicial review of an ALJ's adjudication of a contested case—includes no language disavowing the APA's motion-for-rehearing requirement. On the contrary, chapter 48 twice invokes the APA when providing for judicial review of a Registry finding. First, section 48.406 provides that an "employee may file a petition for judicial review" not later than "the 30th day after the date the decision becomes final as provided by Chapter 2001, Government Code." TEX. HUM. RES. CODE § 48.406(b). The APA, in turn, provides that an order is final once a motion for rehearing is not timely filed or, if a motion for rehearing is

12

timely filed, on the date it is overruled by the ALJ or by operation of law. TEX. GOV'T CODE § 2001.144(a)(1)–(2).

Second, judicial review of the ALJ's order "is instituted by filing a petition as provided by Subchapter G, Chapter 2001, Government Code (the APA)." TEX. HUM. RES. CODE § 48.406(c)(1). Subchapter G, in part, codifies the administrative-remedies-exhaustion doctrine, which provides: "A person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter." TEX. GOV'T CODE § 2001.171. And a motion for rehearing is one of the administrative remedies that, under the APA, must be exhausted before seeking judicial review. *Id.* § 2001.145(a) ("A timely motion for rehearing is a prerequisite to an appeal in a contested case . . . .").

We have long held that the APA's motion-for-rehearing requirement is a jurisdictional prerequisite to an appeal from contested-case proceedings. The failure to file such a motion therefore "deprives the district court of jurisdiction to review the agency's decision on appeal." *Temple Indep. Sch. Dist. v. English*, 896 S.W.2d 167, 169 (Tex. 1995); *see also Cent. Power & Light Co. v. Sharp*, 960 S.W.2d 617, 618 (Tex. 1997) (per curiam) ("A proper motion for rehearing is generally a jurisdictional prerequisite for judicial review of an agency final order."); *Lindsay v. Sterling*, 690 S.W.2d 560, 563 (Tex. 1985) ("The requirement of having a motion for rehearing overruled, thus exhausting administrative remedies, is a jurisdictional prerequisite to judicial review by the district court and cannot be waived by action of the parties.").[3] Accordingly, the

---

[3] We acknowledge these cases predate more recent holdings in which "we have been 'reluctant to conclude that a [statutory] provision is jurisdictional, absent clear legislative intent to that effect.'" *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 306 (Tex. 2010) (quoting *City of DeSoto v. White*, 288 S.W.3d 389, 393 (Tex. 2009)); *see also Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000) ("[T]he modern direction of policy is to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject[-]matter jurisdiction.") (internal quotation omitted). Neither party raises the question in this case whether the APA's motion-for-rehearing prerequisite

13

court of appeals correctly held the trial court below lacked jurisdiction to consider Mosley's appeal.

We address Mosley's remaining arguments in light of our holding on the general applicability of the APA's motion-for-rehearing requirement. First, while we acknowledge that the APA authorizes agencies to "adopt rules of practice stating the nature and requirements of all available formal and informal procedures," *see* TEX. GOV'T CODE § 2001.004(1), we disagree with Mosley that this provision renders the Department's now-repealed rule a valid exercise of its rulemaking authority. Whatever an agency's authority is under section 2001.004, it cannot extend to contravening the APA's express requirements. The APA's purpose is to "provide minimum standards of uniform practice and procedure for state agencies." *Id.* § 2001.001(1). It would be self-defeating for the APA to allow an agency to use the rulemaking process to sidestep its requirements. The Agencies themselves have disclaimed any authority to enact the now-repealed rule quoted in Mosley's letter, and we cannot hold that the Agencies ever had the authority to enact such a rule in contravention of the APA's motion-for-rehearing requirement. *See Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 282 (Tex. 1999) ("[A]n administrative agency's construction of a statute cannot contradict the statute's plain meaning.").

Nor are we persuaded that the legislature's revisions to other provisions of chapter 48 of the Human Resources Code—while leaving the sections concerning finality of orders and judicial review untouched—indicate legislative acceptance of the Department's implementation of those

is not jurisdictional in light of more recent case law, so we have no reason to revisit our holdings to that effect. Nor do we cast doubt on them. Rather, we emphasize that *Dubai* and its progeny remain the standard for prospective decisions concerning whether a statutory prerequisite to maintaining a cause of action is mandatory or jurisdictional. *See, e.g.*, *Tex. Mut. Ins. Co. v. Chicas*, ___ S.W.3d ___ (Tex. 2019) (concluding a 45-day deadline to seek review from an appeals-panel decision under section 410.252 of the Texas Workers' Compensation Act is not jurisdictional).

14

provisions. We have sometimes held that when "an *ambiguous* statute that has been . . . given a longstanding construction by a proper administrative officer is re-enacted without substantial change," the legislature is "presumed to have been familiar with that interpretation and to have adopted it." *Tex. Dep't of Prot. & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 176 (Tex. 2004) (internal quotation omitted) (emphasis added). But neither the APA nor chapter 48 of the Human Resources Code is ambiguous. Even if we did not hold that the APA generally applies absent an express statutory indication to the contrary, the judicial-review provisions in chapter 48 themselves invoke the APA. Nor are we presented with any argument that the now-repealed Department rule was a "longstanding construction" entitled to any deference.

We further disagree with Mosley that reference only to subchapter G of the APA in Human Resources Code section 48.406(c) limits reference to the APA's other provisions for purposes of determining when a Registry finding is appealable. Mosley relies on section 48.406(c), which provides that judicial review "is instituted by filing a petition as provided by Subchapter G, Chapter 2001, Government Code." TEX. HUM. RES. CODE § 48.406(c)(1). Because the immediately preceding subsection invokes the APA in its entirety, *see* TEX. GOV'T CODE § 48.406(b), Mosley suggests we should view the reference to only subchapter G in subsection 48.406(c) as a limited invocation not inclusive of the finality provisions and motion-for-rehearing requirement found in subchapter F. But Subchapter G *does* state that Mosley may seek judicial review only if she has "exhausted all administrative remedies available within a state agency." TEX. GOV'T CODE § 2001.171. Those administrative remedies are expounded on outside of subchapter G, and we see no intent in section 48.406(c) to divorce Subchapter G from its larger context in the APA. *See*

*Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 398 (Tex. 2000) ("Each provision must be construed in the context of the entire statute of which it is a part.").

We also reject Mosley's argument that the order against her was final for purposes of appeal pursuant to an APA provision providing that an order may be final on "the date specified in the decision or order for a case in which all parties agree to the specified date in writing or on the record[.]" TEX. GOV'T CODE § 2001.144(a)(4)(A). Mosley argues that her request for a hearing governed by the Department's rules constituted her written agreement to the date her order would become final under the terms explained in her letter. We disagree. Nothing in the applicable provision suggests the simple invocation of a hearing amounts to an agreement in writing on the date on which an as yet non-existent order would become final—and Mosley presents us with no authority supportive of so broad an interpretation.

Mosley also argues that filing a motion for rehearing would have been futile, and therefore an exception to any exhaustion requirement should apply. She insists that under the Agencies' rules and practice at the time, there was no procedure for where, when, or how to file a motion for rehearing of a Registry finding. But the APA itself provides that procedure. And there is no evidence that the Commission necessarily would not have considered Mosley's motion for rehearing had she filed one, nor does it matter that the Commission possibly would have refused to do so. The Agencies have already conceded their rules were inconsistent with the law and have updated them accordingly. The question is whether Mosley was required to try to move for rehearing.

We affirm the court of appeals' judgment that Mosley was required to file a motion for rehearing of the Registry finding before seeking judicial review.

16

## III

### *Due Process*

We now turn to Mosely's due-process claim. Mosley and the Institute for Justice, appearing as amicus curiae, argue that even if a motion for rehearing is required, the representations in the ALJ's letter and the quoted provisions of the regulation were so misleading that they amounted to inadequate notice and violated Mosley's right to due process. Mosley contends the misrepresentations of law in the letter and the regulation imperil her liberty and property interests, and that protecting her interests would be no burden on the government's interest. Both she and the amicus note that due process limits the presumption that every person knows the law. And they cite a line of federal cases holding that misleading agency statements or representations constitute inadequate notice and thus violate due process.

The Department concedes its own regulation was wrong, and an internal Department memo suggests its staff knew the regulation created some due-process issues. However, the Agencies argue Mosley was charged with knowledge of the law and a presumption she would consult the APA and its motion-for-rehearing requirement before seeking judicial review. They argue the incorrect statements did not, as a matter of law, prevent Mosley from filing a motion for rehearing and obtaining judicial review because she could have complied with both the APA and the then-existing regulation. The Agencies also contend that because Mosley failed to exhaust administrative remedies before pursuing her constitutional claim, it suffers the same fate as her claim for review of the order on the merits.

As a threshold matter, we reject the Agencies' contention that Mosley's failure to file a motion for rehearing deprives us of jurisdiction to consider Mosley's due-process argument. We

17

have previously stated that "[a]lthough agencies have no power to preempt a court's constitutional construction, a party asserting [a constitutional claim] must first exhaust its administrative remedies and comply with jurisdictional prerequisites for suit." *City of Dallas v. Stewart*, 361 S.W.3d 562, 579 (Tex. 2012). But the issue here is not whether the Commission had authority to resolve Mosley's constitutional claim. Rather, the question is whether the Commission's misleading letter deprived Mosley of her right to seek judicial review of the ALJ's decision on the merits. Accordingly, the Agencies' argument fails for the simple reason that Mosley's due-process claim is not a direct attack on the Registry finding. While that claim would require exhaustion, an attack on the Agencies' affirmative misdirection—which Mosley argues deprived her of the ability to exhaust her administrative remedies in the first place—does not. It would be nonsensical to require Mosley to raise a constitutional challenge in a motion for rehearing when her constitutional complaint is that the Agencies misdirected her away from moving for rehearing. Having concluded we possess jurisdiction over Mosley's constitutional claim, we now address its merits.

We conclude that the misrepresentations in the letter, largely due to the incorrect regulation included therein, effectively deprived Mosely of her right to judicial review and violated her right to due process. Instead of directing her to file a motion for rehearing, the letter misled Mosley to believe the order would become "final" and that her name would be placed on the Registry "unless" she filed "a timely petition for judicial review" within thirty days. This misdirection makes this case distinguishable from others in which the government simply failed to inform a party about an available remedy. *Cf. City of West Covina v. Perkins*, 525 U.S. 234, 241 (1999) (holding no due-process deprivation when city notified citizen that it seized his property without telling him what he must do to recover the property); *City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 238–39

18

(Tex. 2011) (same). So while the Agencies may be generally correct that parties have an obligation to discover and satisfy any prerequisites to judicial review, this duty is in tension with the government's constitutional obligation to furnish due process. And that obligation is not satisfied by publishing an erroneous regulation, providing that regulation to those who might seek judicial review of a Registry finding, and then blaming the appellant who fails to discover the regulation was wrong all along. We therefore disagree with the Agencies' contention that Mosley should have ignored these instructions and known that an entirely separate course of action, unmentioned in either the letter or regulation, was in fact necessary.[4]

The Texas Constitution's due-course-of-law guarantee provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX. CONST. art. I, § 19. It is nearly identical to the Fourteenth Amendment's due-process clause, which provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law. . . ." U.S. CONST. amend. XIV, § 1. "While the Texas Constitution is textually different in that it refers to 'due course' rather than 'due process,' we regard these terms as without meaningful distinction" and thus "have traditionally followed contemporary federal due process interpretations

---

[4] The Agencies caution that this approach would "cut against this Court's case law in the estoppel context holding that even if the government misleads an individual, 'her failure to exhaust her administrative remedies is fatal to her action.'" (quoting *Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan*, 51 S.W.3d 293, 294 (Tex. 2001) (per curiam)). In *Sullivan*, we held that a failure to exhaust administrative remedies was not excused by government officials erroneously telling a would-be appellant that there was "nothing more for him to do, and that as far as [the government was] concerned the matter was concluded." But Mosley does not argue the Agencies are estopped from arguing the trial court lacked jurisdiction over her appeal. *See id.* ("As a general rule, a court cannot acquire subject-matter jurisdiction by estoppel."). She concedes the trial court lacked jurisdiction if a motion for rehearing was required. Insisting her position "has nothing to do with estoppel," Mosley instead argues the Agencies' procedural due-process violation entitles her not to jurisdiction at the trial court, but to a belated opportunity to file the requisite motion for rehearing with the ALJ, thus allowing her a second chance to seek judicial review.

of procedural due process issues." *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995).

A two-part test governs a due-process claim: we must determine whether petitioners "(1) ha[ve] a liberty or property interest that is entitled to procedural due process protection; and (2) if so, we must determine what process is due." *Id.* Included among the protected liberty interests is the right "to engage in any of the common occupations of life." *Id.* (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972). Due process must also be satisfied "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Than*, 901 S.W.2d at 930. Mosley undoubtedly has a liberty interest entitled to due-process protection; the placement of her name on the Registry threatens not only her right to engage in employment as a caregiver by effectively ending her career, but also damages her "good name, reputation, [and] honor." *See id.* at 929–30. Furthermore, Mosley has a statutory right to judicial review of the Registry finding. *See* TEX. HUM. RES. CODE § 48.406. The next question is what process is due. *See Than*, 901 S.W.2d at 930.

"Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (citing *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976); *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306 (1950)). We measure what process is due under a "flexible standard" that depends on "the practical requirements of the circumstances." *Id.* This standard includes three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative

20

burdens that the additional or substitute procedural requirement would entail. *Id.* (citing *Mathews*, 424 U.S. at 335). In the context of an administrative hearing, "[t]he ultimate test of due process of law . . . is the presence or absence of rudiments of fair play long known to our law." *Martinez v. Tex. State Bd. of Med. Exam'rs*, 476 S.W.2d 400, 405 (Tex. Civ. App.—San Antonio 1972, writ ref'd n.r.e.).

The first factor weighs heavily in Mosley's favor because the placement of her name on the Registry will forever bar her from engaging in home-healthcare work. However, it is the second factor which is truly at issue in this case: whether there was a high risk of an erroneous deprivation of Mosley's rights under the procedures implemented. We agree with Mosley that the Agencies' notice in this case created a high risk of erroneous deprivation of Mosley's rights. The Agencies counter that Mosley was charged with discovering and satisfying any prerequisites to judicial review regardless of any unintended misdirection by the Agencies. We agree that "[t]he rule that ignorance of the law will not excuse is deep in our law . . . ." *Lambert v. California*, 355 U.S. 225, 228 (1957) (internal citation and quotation omitted). But "due process places some limits on its exercise." *Id.*

It is well-established that "[t]he failure to give adequate notice violates the most rudimentary demands of due process of law." *Mosser v. Plano Three Venture*, 893 S.W.2d 8, 12 (Tex. App.—Dallas 1994, no writ); *Mullane*, 339 U.S. at 314 ("The notice must be of such nature as reasonably to convey the required information."). Thus, several federal courts hold that a "sufficiently misleading" notice may violate a claimant's right to due process. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990); *see also Brody v. Vill. of Port Chester*, 434 F.3d 121, 129–30 (2d Cir. 2005); *U.S. v. Henderson*, 707 F.2d 853, 856–57 (5th Cir. 1983); *Brandt v.*

*Hickel*, 427 F.2d 53, 56 (9th Cir. 1970). Because of the similarities between the due-process language of the Fourteenth Amendment and our own Constitution, we consider federal due-process jurisprudence "to be persuasive authority in applying our due course of law guarantee." *Than*, 901 S.W.2d at 929.

In *U.S. v. Henderson*, the Fifth Circuit held that a defective notice of acceleration provided by the government violated due process. 707 F.2d at 856–57. There, the government's notice stated that the only way to avoid foreclosure was to pay the loan's entire outstanding balance plus interest. *Id.* at 855. State law, however, provided that homeowners could avoid foreclosure by simply paying the past-due amount. *Id.* at 855–56. On appeal from eviction proceedings for failing to pay any amount, the court held that the government's notice "r[an] afoul of appellants' fundamental due process rights" because it "virtually assure[d] that appellants, unless otherwise informed, would believe they were unable to save their home from the auctioneer's block." *Id.* at 857. Although the court agreed with the government that it "was under no obligation to provide [the homeowners] with its interpretation of the applicable statutory provisions," it noted "the government nonetheless may not affirmatively misrepresent the obligations of a debtor." *Id.* at 856.

The amicus here relies heavily on *Brandt v. Hickel*, 427 F.2d 53 (9th Cir. 1970). After an administrative agency rejected the plaintiffs' lease offer because it contained unequal interests, the agency notified the plaintiffs that they could either appeal or could resubmit their offer "without losing their priority." *Id.*at 55. Relying on that representation, plaintiffs filed a new application with equal interests. *Id.* After a party whose lease offer was junior only to that of the plaintiffs protested, the agency "concluded that the amended offer was an attempt to create a new offer and

that by failing to appeal from the decision of the [agency] concerning the validity of the original lease offer, the appellants lost any right to assert the validity of the original offer." *Id.* at 55. Noting that the agency's decision "concern[ed] [plaintiffs'] constitutional right to procedural due process of law," and that due process requires "proper notice," the court held in the plaintiffs' favor. *Id.* at 56. The court also noted that "'[l]aws under which (administrative) agencies operate prescribe the fundamentals of fair play,'" *id.* at 56 (quoting *Fed. Commc'ns Comm'n v. Pottsville Broad. Co.*, 309 U.S. 134, 143 (1940)), and that "some forms of erroneous advice are so closely connected to the basic fairness of the administrative decision making process that the government may be estopped from disavowing the misstatement." *Id.* Concluding that the plaintiffs were "denied an effective right of appeal," the court admonished: "To say to these appellants, 'The joke is on you. You shouldn't have trusted us,' is hardly worthy of our great government."[5] *Id.* at 57.

In the social-security context, the Ninth Circuit has held that a notice violated a disability claimant's right to due process when it failed to clearly indicate that a determination denying benefits would become final absent a request for reconsideration. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1199 (9th Cir. 1990). The court reasoned: "Requiring notices to *accurately state how a claimant might appeal* an initial decision does not impose a significant financial or administrative burden on the [agency]," and that "the form of the notice used here is sufficiently misleading that it introduces a high risk of error into the disability decisionmaking process." *Id.* at 1203 (emphasis

---

[5] It is, instead, reminiscent of an infamous line from the 1978 film *Animal House*, which Otter uttered to Flounder. We paraphrase it for decorum's sake: "Come on, Flounder. You can't spend your whole life worrying about your mistakes. You [messed] up. You trusted us." NATIONAL LAMPOON'S ANIMAL HOUSE (Universal Pictures 1978).

added). To pass constitutional muster, the notice was required to "clearly indicate that if no request for reconsideration is made, the determination is final." *Id.*

Other circuit courts analyzing defective notices in the social-security context require a claimant to establish not only that the notice received was defective but also that the claimant detrimentally relied on the defective notice. *See, e.g.*, *Loudermilk v. Barnhart*, 290 F.3d 1265, 1269–70 (11th Cir. 2002); *Torres v. Shalala*, 48 F.3d 887, 893 (5th Cir. 1995); *Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir. 1995); *Day v. Shalala*, 23 F.3d 1052, 1066 (6th Cir. 1994); *Burks-Marshall v. Shalala*, 7 F.3d 1346, 1349 (8th Cir. 1993). In *Loudermilk v. Barnhart*, the Eleventh Circuit held a claimant lacked standing to challenge the refusal to reopen his social-security-benefits claim because, even though the notice he received was defective, he failed to show he detrimentally relied on it. 290 F.3d at 1269–70. Noting the United States Supreme Court's requirement of a causal connection between the injury and the complained-of conduct in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the court of appeals concluded a similar causal connection was necessary between the inadequate notice and the inability to collect social-security benefits. *Id.* at 1269. The court reasoned the claimant had provided nothing more than a "bald assertion of reliance," observing that if he had in fact been misled he would have acted on the information provided in the notice within a reasonable time rather than waiting four years before doing so. *Id.* at 1270.

The United States Supreme Court has also suggested that an administrative agency's misleading statements may offend "traditional notions of fairness." *United States v. Penn. Indus. Chem. Corp.* (*PICCO*), 411 U.S. 655, 674 (1973). In *PICCO*, the government filed a criminal information alleging that PICCO violated the Rivers and Harbors Act of 1899 when it discharged

24

industrial refuse without first obtaining a permit from the Secretary of the Army. *Id.* at 657–58. PICCO, however, sought to introduce evidence that its failure to obtain a permit was "excusable" because the government had consistently construed the act to require permits only for refuse deposits "that would impede or obstruct navigation." *Id.* at 659. Thus, PICCO alleged, the government "affirmatively misle[d] PICCO into believing that a . . . permit was not required" for it to discharge the complained-of refuse. *Id.* at 659–660.

The Court agreed. Even though the government's published regulations required permits to discharge refuse for items other than those that "would impede or obstruct navigation," the Court focused on the government's consistent construction of the act. *Id.* at 672. Given that long-standing construction, it was immaterial that PICCO "had a right to look to the . . . regulations for guidance." *Id.* at 674. The Court noted that PICCO's reliance on the government's construction "deprived PICCO of fair warning as to what conduct the Government intended to make criminal," and concluded that "traditional notions of fairness inherent in our system of criminal justice prevent the Government from proceeding with the prosecution." *Id.*

We are persuaded that these federal cases are sufficiently analogous to Mosley's situation. Even if we apply the more stringent two-prong approach requiring a showing of detrimental reliance, Mosley prevails. The notice to Mosley—the letter and regulation on which it relies— effectively said her career would be over unless she filed for judicial review within thirty days. It failed to state the need to first file a motion for rehearing and affirmatively misrepresented that filing a petition for judicial review was the appropriate and necessary next course of action. The Department has even acknowledged that the regulation (1) misstated the law and (2) was amended to "update the . . . process requirements regarding the due process rights" of those appealing

25

Registry findings and more clearly explain the employee's administrative remedies. Like the misrepresentation of the requirements for avoiding foreclosure in *U.S. v. Henderson* and the patently incorrect explanation of the lease-offer-appeal process in *Brandt v. Hickel*, here the Agencies affirmatively mispresented the steps Mosley needed to take to protect her interests. *See generally, Henderson*, 707 F.2d at 857; *Brandt*, 427 F.2d at 56. Mosley did exactly as the letter and rule directed—she filed for judicial review within thirty days—only to be informed that in so doing she had failed to exhaust her administrative remedies and was not entitled to judicial review. Thus, unlike the social-security disability claimant in *Loudermilk*, Mosley has shown she relied on the inadequate notice to her detriment. *See generally Loudermilk*, 290 F.3d at 1270.

The Agencies—acknowledging that the regulation was "incorrect"—argue Mosley should have ignored the instructions contained in the notice and followed the APA's motion-for-rehearing requirement of which she had no independent knowledge. Alternatively, citing our holding in *Simmons v. Texas State Board of Dental Examiners*, the Agencies argue Mosley should have at least attempted to follow both the notice and the APA. *See* 925 S.W.2d 652 (Tex. 1996) (per curiam). At issue in *Simmons* were conflicting statutory deadlines—the Dental Practice Act required an appellant to seek judicial review of an agency's order within thirty days, but the APA required a motion for rehearing to be filed first and gave the ALJ forty-five days to dispose of it. *Id.* at 653. We held that the "judicial-review requirements of the APA" were "substantially satisfied" because the appellant "made every attempt to comply with both" statutes. *Id.* at 654.

But *Simmons* is distinguishable because it did not involve reliance on an incorrect agency rule or an ALJ's misleading notice letter. At issue here is not conflicting statutory deadlines but an agency's misdirection concerning the *correct* deadline. The appellant in *Simmons* was aware of

26

the statutory conflict and did his best to comply with both deadlines. *See id.* But Mosley was not aware of any problem at all with simply following the instructions given her by the Commission. And we have suggested before that an agency may violate due process if it adopts a rule that prevents one from taking advantage of defined procedures. *See Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 658–59 (Tex. 2004) (holding no due-process violation when there was "no evidence presented to show that [agency] rules . . . prevent[ed] [a party] from taking advantage of these defined procedures to challenge the reimbursement amounts paid for medical services."). This aligns with the federal cases discussed above.

Given the Agencies' concession that the Department's rule was incorrect, we conclude the notice sent to Mosley and the regulation it quoted were so misleading as to prevent Mosley from filing the motion for rehearing the APA requires. Consequently, we hold that the Agencies violated Mosely's due-course-of-law rights. Having concluded Mosley is entitled to the relief she seeks under due-process and due-course-of-law principles, we decline to address her argument that the Agencies' actions violated the Open Courts provision of the Texas Constitution. Because "the remedy for a denial of due process is due process," *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 933 (Tex. 1995), we remand Mosley's case to the Commission to allow Mosley an opportunity to file her motion for rehearing.

\* \* \*

The trial court ruled on both the Agencies' jurisdictional plea and Mosley's appeal on the merits. Because the court of appeals concluded the trial court lacked jurisdiction, it did not consider the merits of Mosley's case. We affirm the court of appeals' judgment in part and reverse in part. We do not remand the case to the court of appeals for reconsideration of Mosley's appeal on the

merits because we agree the trial court lacked jurisdiction to consider Mosley's case in the first place. Instead, we direct the Health and Human Services Commission to reinstate Mosley's administrative case to afford her an opportunity to seek rehearing of the order entered against her, thus allowing her to seek judicial review by the district court anew should the commission deny her motion for rehearing.

_____

Jeffrey V. Brown
Justice

OPINION DELIVERED:  May 3, 2019